# CITY OF ROANOKE

*v.*

## HARRISON.

*(Supreme Court of Appeals of Virginia, March 15, 1894.)*

[19 S. E. Rep. 179.]

**Municipal Corporation—Liability for Defective Street Crossing.**\*

When a municipal corporation is empowered by its charter to lay off, pave, and keep in repair its streets, and to levy taxes for such purposes, it is liable for injuries caused by neglect to keep its streets in repair.

**Same—Same—Case at Bar.**

In an action against a city for injuries occasioned by a defective street crossing, it appeared that plaintiff, after passing over a board cross walk, had to step down about 12 inches to a platform of rock and earth 15 inches wide, and then step over a gutter 18 inches wide to another crossing made of flagstones. This crossing was at least 17 inches wide, was about on a level with said platform, and, through constant snow and rain, it had become nearly covered with mud. The plaintiff saw it was a bad crossing, but, being in a hurry, tried to jump over it, and in so doing stepped upon an uneven part of the flagging, where it was raised, and fell: *held*, that the city was not liable.

Error to hustings court of Roanoke.

Action by H. W. Harrison against city of Roanoke for damages caused by the defective condition of a cross walk. Judgment for plaintiff. Defendant brings error. Reversed.

*Thomas W. Miller*, for plaintiff in error.

*Penn & Cocke*, for defendant in error.

---

\*See monographic note on "Municipal Corporations" appended to Danville *v.* Pace, 25 Gratt. 1 (Va. Rep. Anno.).

RICHARDSON, J., delivered the opinion of the court.

This is a writ of error to a judgment of the hustings court of the city of Roanoke rendered on the 25th day of September, 1891, in an action of trespass on the case, wherein H. W. Harrison, the defendant in error here, was plaintiff, and the city of Roanoke was defendant. The object of the suit was to recover damages for an injury received by the plaintiff from a fall on one of the streets of said city, which caused a fracture of his leg, and which, it is alleged, was caused by the negligence of the defendant city in permitting a crossing on one of its streets to become out of repair, and in a dangerous condition, with deep holes, which condition had existed many days prior to the accident, and after notice to the city. At the trial the jury found for the plaintiff, and assessed his damages at $800. The defendant city, by its attorneys, moved the court to set aside the verdict, and award a new trial, on the ground that the verdict was contrary to the law and the evidence; but the court overruled the motion, and the defendant excepted. And the court thereupon entered judgment according to the finding of the jury, and the cause is here for review on a writ of error allowed by one of the judges of this court.

The law of the case has been long settled, and there can be no difficulty in applying it. The doctrine is familiar that when a municipal corporation has been clothed by its charter, as in the present case, with power to lay off, pave, and keep its streets in order, and to levy taxes for such purposes, it is its duty to do so; and if it neglects to keep its streets, sidewalks, and crossings in a safe condition, it, in general, becomes liable in damages to any persons who, without fault on their part, sustain injury by reason of such neglect. But a municipal corporation is not compellable to answer in damages for every injury that persons may receive in a public street. It is not an insurer of absolute

immunity from danger and harm arising in the use of its streets. It is its duty only to see that they are reasonably safe for persons exercising ordinary care and prudence. And, moreover, the plaintiff must not only allege, but he must establish by evidence, that the municipality had notice, expressed or implied, of the defect complained of ; and mere slipperiness of a street, sidewalk, or crossing, occasioned by ice or snow or mud that has not so accumulated as to form an obstruction, is not such a defect as will make a municipality answerable in damages for an injury occasioned thereby. Noble v. City of Richmond, 31 Gratt. 271; Orme v. Same, 79 Va. 86; Clark v. Same, 83 Va. 355, 5 S. E. 369 ; Gordon v. Same, 83 Va. 436, 2 S. E. 727 ; 2 Dill. Mun. Corp. § 1006. In order to a just solution of the question under consideration, we have only to apply these principles to the facts disclosed by the record, remembering that the plaintiff in error having excepted to the judgment of the court below, and the evidence, not the facts, being certified, we must apply the rule of decision which governs this court in considering a demurrer to the evidence of the party excepting.

The facts deducible from the evidence so viewed are as follows : In Roanoke city, Salem, Railroad, Shenandoah, and Third avenues are streets running parallel, and east and west. Jefferson street runs north and south, and at right angles with the four avenues. Third avenue is sometimes called "Wells Street," in the record. The defendant in error, who was the plaintiff below, was a practicing physician, and about noon on the 13th of March, 1891, left his office, on Salem avenue, and, proceeding eastward down said avenue to Jefferson street, turned, and went northward, on the west side of the latter street, past Railroad and Shenandoah avenues (at either of which he might have crossed over to the east side), and continued on to Third avenue, on the north side of which, about four doors from its intersection

with Jefferson street, lived Mrs. Gilmer, to whose house
the plaintiff was called to see a patient, and to fill which
call he was on his way.    Over from the west side of Jeffer-
son street, to the north side of Third avenue, was a crossing
for pedestrians.    This was the crossing by which the plain-
tiff proposed to reach Third avenue ; but in doing this he
had to step down from the plank sidewalk, about 12 inches,
onto a platform of rock and dirt about 15 inches wide, and
from thence step over a gutter not more than 18 inches in
width (a step which, as one of his witnesses testifies, a child
might readily take by a little effort), onto the flagging which
constitutes the crossing.    The plaintiff and several of his
witnesses designated it by the name of "flagging," which is
defined to be "a pavement of flagstone ;" and some witnesses
described it as stones laid continuously across the street,
from one gutter on the one side to the gutter on the other
side.    This crossing was at least 17 inches wide, and was
about on a level with the platform of rock and dirt.    From
December previous till the time of the accident, there had
been much snow and rain, so that the street, which was really
but a dirt road, neither paved nor macadamized, was much
cut up, and was deep in mud, resulting mainly from passing
wagons, the wheels of which carried and deposited the mud
onto the flagging, and cut holes on either side thereof by fall-
ing off the solid rock down into the soft mud.    But none of the
flagstones were displaced or broken.    The plaintiff testified
that, when he got there, everybody else had been crossing
there ; that he was in a hurry, and it was necessary for him
to cross there to save time ; that he saw it was a bad crossing,
and tried to jump his way over it ; that it was the most direct
way to the house to which he was going, and the one he
always took in going to that house, where he had before then
been practicing.    So it will be seen that the plaintiff was
acquainted with the crossing.    He says he intentionally
crossed there.    His witness Lee, after giving the distances

mentioned above, of the height of the plank sidewalk above the platform of rock and dirt, and the breadth of the gutter, and the width of the flagging, said that after one got across the gutter there was no trouble about crossing all the way over the street, provided one kept on the flagging, but that if one got off the flagging he would go down into the holes filled with soft mud, which holes were on both sides of the flagging, and were made by wagon wheels dropping down the stones into the soft mud ; and the witness said that the wagons crossing there kept the stones at a high point. The plaintiff also testified that at the time of his accident he could see tracks part of the way on the flagging, made by persons who had crossed over.   Such being the condition of the flagging across the street, the plaintiff's acquaintance with it, and the condition of the crossing being referable to the weather, there remains only to ascertain how the plaintiff, the defendant in error here, happened to fall, and whether his fall was occasioned by any such negligence of the defendant city as ought to render it liable in damages.   The plaintiff himself explains the occurrence.   In answer to questions on cross-examination, the following occurred : Question. "Doctor, you said you were crossing in the footpaths of other people.   Did you keep in the same path they had made?"   Answer.  "Yes, sir ; I did, just so much as I could do it.   On each side was a great crowd of mud, and this was the best place to go."   Q.  "Did the street tilt up? Can you understand how it was?"   A.  "No, sir ; I cannot understand it at all.   I know I fell, and I think, from the natural consequences and sequences, stepped upon an uneven part of the flagging, where the flagging is raised, here." Such is the plaintiff's account of the accident, while the explanation given by Dr. Fry, the plaintiff's attending physician, who was examined as a witness in his behalf, in his examination in chief, is :   "He [meaning the plaintiff] evidently stepped upon some point, and twisted his foot, and when his foot was twisted, the bone was fractured."

Now, as to the notice to the defendant city of the defect in, and dangerous condition of, this particular crossing: The only evidence touching this question is that of Mrs. Gilmer, who testified that this crossing had been made there not more than two years; that before that it was simply a mudhole; that she complained at one time, several years ago, to the chairman of the street committee, who told her to get up a petition to the city council; but that she took sick, and did not do it. The fair presumption is that this complaint was as to the existence of the mudhole, and that the proposed petition was for a crossing to be made at that point.

Having, with much pains, reviewed, and carefully considered, the evidence adduced by the plaintiff (the defendant in error here), we find ourselves unable to arrive at the conclusion that that evidence was sufficient to warrant the verdict of the jury, or any verdict favorable to the defendant in error. The evidence does not show that the crossing was faulty in its construction, or out of repair, or in a dangerous condition. The descent from the plank sidewalk, about a foot, was not too great; the step across the gutter, about 18 inches, was not too long; the continuous pavement of flagstones, about 17 inches wide, was sufficiently broad for safe crossing, and was probably in as good order as was practicable in such weather. Any person, other than one staggering from intoxication, would have been able to keep on the flagging, which was of ordinary width, and to have crossed the street in safety. But there is no complaint that the flagging was too narrow. Several witnesses admitted that the crossing was all right, if one kept on it all the way over. The plaintiff himself made no complaint of its narrowness. The only complaint made by him was that he slipped on an uneven place in the flagging, and fell. Had the flagging been perfectly smooth, and without uneven places, the mud, made liquid by the frequent rains and

snows, would have rendered it equally, if not still more, slippery. The slippery condition of a sidewalk or a crossing, from ice, snow, or mud, cannot, at all times and under all circumstances, be successfully guarded against, and it is said by a distinguished law writer that a municipal corporation is not ordinarily answerable in damages for injuries occasioned thereby. Dill. Mun. Corp. § 1006. Where the best-constructed walks are rendered slippery by either of these causes, there is always danger of falling, and consequent injury. The writer last above referred to is sustained by reason and authority. The ice, the snow, and the mud are natural and unavoidable incidents. A city can only make use of the requisite skill and industry to remove or mitigate their effects. This the defendant city did do, by keeping a force of hands constantly employed in removing the ice, snow, and mud off of the crossings of its 200 miles of streets. But it is in evidence that, in such a state of weather as then prevailed, the mud was no sooner scraped off the flagging than the wheels of passing wagons, reeking with mud, would again cover it with mud. As we hold that the record contains no evidence seriously tending to satisfy us that the injury resulting to the defendant in error (the plaintiff below) from his fall was occasioned by any negligence of the defendant city, for which it should respond in damages, we do not deem it necessary to consider any other questions presented by the record. For these reasons, we are clearly of the opinion that the evidence, aside from that of the defendant below, did not warrant the finding of the jury, and that the court below manifestly erred in refusing to set aside the verdict of the jury, and to award a new trial. And we are therefore of opinion that the judgment complained of be reversed and annulled, the verdict of the jury set aside, and the cause remanded to the said hustings court for a new trial to be had therein in accordance with the views expressed in this opinion. Judgment reversed.